UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

JESSICA GOLIAN,

                          Plaintiff,                    16-cv-9037 (JGK)

            - against -                                 OPINION AND ORDER

NEW YORK CITY ADMINISTRATION FOR
CHILDREN SERVICES, CITY OF NEW YORK,
JEREMY HARPER, individually and in
his official capacity, and JENNIFER
DEJESUS,

                          Defendants.
_____

JOHN G. KOELTL, District Judge:

    This case arises from a physical altercation between the

plaintiff, Jessica Golian, a New York City public school

teacher, and the mother of two of her students, Jennifer

DeJesus. Golian reported to New York State child protection

officials that DeJesus's children were possibly victims of child

neglect after observing that the children had long-term

difficulties at school. Although Golian requested that the child

protection officials keep her identity confidential, DeJesus

eventually learned that Golian was the person who filed the

neglect report. DeJesus then allegedly assaulted Golian outside

the school DeJesus's children attend.

    In this action, Golian seeks relief pursuant to 42 U.S.C.

§ 1983, municipal liability, and related state law claims

against the New York City Administration for Children Services

(the "ACS"), the City of New York, and ACS attorney Jeremey Harper (collectively, the "municipal defendants"). Golian argues that the municipal defendants violated her Fourteenth Amendment right to substantive due process by wrongfully disclosing her identity to DeJesus.

The municipal defendants have moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. That motion is **granted**. Golian's federal claims are **dismissed with prejudice**, and Golian's state law claims against the municipal defendants are **dismissed without prejudice.**

Golian also brings state law claims against DeJesus for the alleged physical assault. DeJesus has not appeared in this action. Nevertheless, a default judgment will not issue against her because the Court declines to exercise supplemental jurisdiction over Golian's state law claims in light of the dismissal of her federal claims against the municipal defendants. Golian's claims against DeJesus are therefore **dismissed without prejudice.**

## I.

In deciding a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007); Arista

Records LLC v. Lime Grp. LLC, 532 F.Supp.2d 556, 566 (S.D.N.Y. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. See also Biswas v. City of New York, 973 F. Supp. 2d 504, 511-12 (S.D.N.Y. 2013).

## II.

### A.

The Court accepts the following allegations as true for purposes of this motion to dismiss.

Golian works as a special education teacher at the Lillian Weber School for the Arts ("P.S. 84"), a New York City public

school. Compl. ¶¶9, 15-16 (ECF No. 6). DeJesus's two sons were Golian's students. Compl. ¶¶17, 20.

During the 2015 school year, Golian began to notice that DeJesus's sons had serious attendance and learning issues. Compl. ¶17. Other teachers at P.S. 84 noticed that DeJesus's sons smelled like marijuana or heavy perfume designed to mask the smell of drugs. Compl. ¶19. DeJesus's sons told Golian that they were late every day because DeJesus could not get out of bed. Compl. ¶20.

The staff at P.S. 84, including Golian, began to suspect that DeJesus's drug use caused her sons' lateness. Compl. ¶21. Golian discussed the attendance issues with DeJesus, but noticed no change in the children's attendance. Compl. ¶22. One of DeJesus's sons was required to repeat a grade because of poor performance, which teachers at P.S. 84 attributed to lateness and parental neglect. Compl. ¶23.

School administrators eventually decided that DeJesus must be reported to the New York State Central Register of Child Abuse and Maltreatment (the "SCR"). Compl. ¶24.[1] The

---

[1] In New York State, the Office of Children and Family Services (the "OCFS") supervises the enforcement of child protection laws. The SCR is a division of the OCFS. The "SCR maintains a telephone hotline with a toll-free number, staffed around the clock, for reports of child abuse, neglect, or maltreatment. . . . If [a] report [of child abuse] passes . . . initial screening, [the] SCR transmits the report as well as any background information to a field office in the county where the child is located," which, in New York City, is the ACS. Nicholson v. Scoppetta, 344 F.3d 154, 159 (2d Cir. 2003). The ACS then

administrators selected Golian to file the report against
DeJesus because she taught both of DeJesus's sons as a special
education teacher. Compl. ¶¶25-26.

Golian expressed concern to the school administrators about
reporting DeJesus to the SCR. Compl. ¶27. Golian told the
administrators that DeJesus knew where Golian lived because they
were neighbors. Id. Golian also told the administrators that
DeJesus had previously mentioned to her that DeJesus had engaged
in physical altercations with other women. Id.[2] School
administrators reminded Golian that, notwithstanding her safety
concerns, New York law required her to report suspicions of
child maltreatment to the SCR. Compl. ¶29; see N.Y. Soc. Serv.
Law § 413 (requiring all "school teacher[s]" to report to the
SCR "when they have reasonable cause to suspect that a child"
coming before them in their professional or official capacity
"is an abused or maltreated child").

Golian called the SCR in June 2015 to report DeJesus's
possible neglect. Compl. ¶30. Golian told the SCR operator that
she would prefer to remain anonymous because she feared DeJesus
might retaliate physically. Compl. ¶31. The SCR operator told

---

investigates the report and "may commence child protective proceedings
in Family Court against a parent or guardian." Id.

[2] Golian also claims that she knew another teacher at P.S. 84 who
reported a student's grandmother to the SCR, had her identity
disclosed to the grandmother, and was later attacked by the
grandmother on school grounds. Compl. ¶28.

Golian that the SCR does not accept anonymous reports but her name would remain confidential and would not be disclosed to DeJesus. Compl. ¶32.

Harper, an ACS attorney, called Golian in March 2016 to inform her that the ACS intended to move forward with a case against DeJesus. Compl. ¶33. Harper asked Golian if she would testify against DeJesus. Id. Golian asked Harper to keep her identity confidential. Compl. ¶34. Golian told Harper that she feared for her safety because DeJesus could be violent and knew where Golian lived. Id.

On March 9, 2016, Harper subpoenaed Golian to testify against DeJesus in a Family Court proceeding regarding the child neglect charges. Compl. ¶35.[3] Golian did not appear at the hearing on the advice of P.S. 84's legal counsel. Compl. ¶36.

On April 18, 2016, DeJesus approached Golian outside P.S. 84 and began to insult her. Compl. ¶¶37-38. DeJesus then punched and kicked Golian, slammed her to the ground, chased after her, and attacked her repeatedly. Compl. ¶39. During the attack, DeJesus stated in substance, "I know what you did. I know you called ACS on me." Compl. ¶40. Another person eventually pulled

---

[3] While the Complaint describes the subpoena as being for a "scheduled ACS hearing," at oral argument on the current motion Golian's counsel explained that the subpoena sought Golian's testimony at a Family Court hearing.

DeJesus off Golian, and Golian was able to run into the school to call the police. Compl. ¶¶39, 41.

**B.**

Golian asserts against the ACS and Harper a claim under 42 U.S.C. § 1983 for a violation of her Fourteenth Amendment right to substantive due process (Count 1), a related claim of municipal liability against the ACS and the City of New York pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978), (Count 2), and state law claims against various municipal defendants for negligence, negligent hiring, retention, and supervision, and negligent infliction of emotional distress (Counts 3, 5, and 7). Compl. ¶¶44-70, 78-85, 90-94. Golian also asserts against DeJesus state law claims of assault and battery and intentional infliction of emotional distress (Counts 4 and 6). Compl. ¶¶71-77, 86-89.

The municipal defendants have moved pursuant to Rule 12(b)(6) to dismiss the claims against them.

**III.**

**A.**

As an initial matter, two of the municipal defendants must be dismissed regardless of the merits of Golian's claims.

First, as Golian's counsel conceded at oral argument, the ACS is a department of New York City and therefore not a suable entity. Ampratwum v. City of New York, No. 11-cv-6111 (DLC),

2013 WL 1935321, at *6 (S.D.N.Y. May 9, 2013); see N.Y. City Charter § 396; Ximines v. George Wingate High Sch., 516 F.3d 156, 160 (2d Cir. 2008) ("Section 396 of the [New York City] Charter has been construed to mean that New York City departments, as distinct from the City itself, lack the capacity to be sued.").

Second, Harper is entitled to absolute prosecutorial immunity.

A prosecutor acting within the scope of his duties is entitled to absolute immunity with respect to prosecutorial activities that are "intimately associated with the judicial phase of the criminal process." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010) (citing Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). This immunity extends to actions relating to a prosecutor's function as an advocate. See Peay v. Ajello, 470 F.3d 65, 68 (2d Cir. 2006) (a prosecutor is entitled to absolute immunity despite allegations of misconduct); see also Smith v. Schweiloch, No. 12-cv-3253, 2012 WL 1887124, at *1 (S.D.N.Y. May 22, 2012). The immunity applies "unless a prosecutor proceeds in the clear absence of all jurisdiction," Fields v. Soloff, 920 F.2d 1114, 1119 (2d Cir. 1990) (internal quotation marks omitted), or "without any colorable claim of authority," Shmueli v. City of New York, 424 F.3d 231, 237 (2d Cir. 2005).

"*Mutatis mutandis*, absolute immunity also extends to non-prosecutor officials when they are performing 'functions analogous to those of a prosecutor.' " Cornejo, 592 F.3d at 127 (quoting Butz v. Economou, 438 U.S. 472, 515 (1978)). The Court of Appeals for the Second Circuit has "extended absolute immunity to state and federal officials initiating noncriminal proceedings such as administrative proceedings and civil litigation." Id. at 127-28 (citing Barrett v. United States, 798 F.2d 565, 572 (2d Cir. 1986)).

The Second Circuit Court of Appeals has explicitly held, and Golian does not dispute, that ACS attorneys, such as Harper, are entitled to prosecutorial immunity because they perform "functions analogous to those of a prosecutor," id. at 127 (quoting Butz, 438 U.S. at 515), by "initiat[ing] and prosecut[ing] child protective orders and represent[ing] the interests of the Department and the County in Family Court," id. at 128 (quoting Walden v. Wishengrad, 745 F.2d 149, 152 (2d Cir. 1984)). The only contested issue in this case is whether the Harper's alleged conduct was intimately associated with bringing charges against DeJesus. See id. at 127.

Golian's complaint presents a threshold concern in assessing whether the conduct for which Harper is being sued falls within prosecutorial immunity: Golian fails to allege precisely what Harper did that revealed her identity to DeJesus

and therefore allegedly violated her constitutional rights.
Golian's complaint alleges only that (1) she told Harper her
name and desire for that information to remain confidential, (2)
Harper subpoenaed Golian to testify at the Family Court hearing
against DeJesus, (3) Golian did not appear at the hearing, and
(4) DeJesus later said to Golian "I know what you did. I know
you called ACS on me." Compl. ¶¶34-35, 40. The complaint does
not allege how DeJesus learned of Golian's identity or who
disclosed that information to her, much less that it was a
product of Harper's conduct. Rather, Golian concedes that the
person who disclosed her identity to DeJesus could be "Harper or
another City employee." ECF No. 28, at 11 (emphasis added).[4]

Golian's complaint appears to imply that Harper's issuance
of the subpoena is what revealed her identity to DeJesus in
violation of the Due Process Clause. If that is Golian's intent,
then Harper is entitled to prosecutorial immunity. Issuing a
subpoena for a witness at a court hearing is plainly part of the
prosecutorial function. See Simon v. City of New York, 727 F.3d
167, 171 (2d Cir. 2013) (concluding that prosecutorial immunity
extends to "issuing subpoenas"); Bertuglia v. City of New York,
133 F. Supp. 3d 608, 644-45 (S.D.N.Y. 2015) (same), aff'd, 672
F. App'x 96 (2d Cir. 2016).

---

[4] Golian acknowledges that she could have sued a "John Doe" defendant
and then sought discovery of the identity of the person who disclosed
her name to DeJesus, but she elected instead to sue Harper by name.

The complaint is devoid of any other specific allegation of conduct by Harper that would fall outside the zone of conduct protected by absolute prosecutorial immunity. Accordingly, Harper is dismissed from this action.[5]

**B.**

In any event, Golian has failed to allege a viable claim under 42 U.S.C. § 1983 against the municipal defendants.

Golian alleges that the municipal defendants violated her Fourteenth Amendment right to substantive due process by intentionally and recklessly disclosing her identity to DeJesus and by acting with deliberate indifference to safeguarding her from the physical harm perpetrated by DeJesus. Compl. ¶¶42-51.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law. West

---

[5] The municipal defendants argue in the alternative that Harper is entitled to qualified immunity. A defendant is entitled to qualified immunity in a § 1983 case "if either (1) their conduct did not violate clearly established rights of which a reasonable person would have known, or (2) it was objectively reasonable to believe that their acts did not violate these clearly established rights." Cornejo, 592 F.3d at 128 (internal quotation marks and brackets omitted). Golian concedes that there is no case directly on point that establishes Harper violated her constitutional rights. Moreover, as explained below, the applicable due process case law is sufficiently unclear that the Court cannot conclude Golian's rights were clearly established, and the complaint does not set out an objectively unreasonable course of conduct by Harper. Therefore, Harper would be entitled to qualified immunity as an alternative to absolute prosecutorial immunity.

v. Atkins, 487 U.S. 42, 48 (1988); see also Padilla v. Westchester Cnty., No. 12-cv-289 (JGK), 2012 WL 690641, at *1 (S.D.N.Y. Mar. 2, 2012).

"Substantive due process protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill advised." Cunney v. Bd. of Trs. of Vill. of Grand View, 660 F.3d 612, 626 (2d Cir. 2011) (quoting Kaluczky v. City of White Plains, 57 F.3d 202, 211 (2d Cir. 1995)). The mere failure to follow state law does not violate substantive due process. See Kuck v. Danaher, 600 F.3d 159, 167 (2d Cir. 2010).[6] Substantive due process "is the right to be free of arbitrary government action that infringes a protected right." O'Connor v. Pierson, 426 F.3d 187, 200 n.6 (2d Cir. 2005).

"[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." DeShaney v. Winnebago Ctny. Dep't of Soc. Serv., 489 U.S. 189, 195 (1989).

---

[6] Golian asserts that New York's statutory scheme requiring teachers to report suspicions of child maltreatment creates a cognizable liberty interest. The concept of statutorily created liberty interests arises in the procedural due process context, not the substantive due process context, and thus is inapplicable in this case. See Local 342, Long Island Pub. Serv. Emps. v. Town Bd. of Town of Huntington, 31 F.3d 1191, 1198 (2d Cir. 1994) ("While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, substantive due process rights are created only by the Constitution." (quoting Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 229 (1985) (Powell, J., concurring))).

The purpose of the Due Process Clause is "to protect the people from the State, not to ensure that the State protect[s] them from each other." Id. at 196. Therefore, "[a]s a general matter, . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." Id. at 197.

In the Second Circuit, there are "two separate and distinct theories" under which a state actor's failure to protect against private violence can violate substantive due process -- the "special relationship" theory and the "state-created[ ]danger" theory. Benzman v. Whitman, 523 F.3d 119, 127 (2d Cir. 2008) (internal quotation marks omitted). Both theories are limited, and the Court of Appeals has applied them "with considerable stringency." Id. If a plaintiff's claim satisfies one or both of these theories, the plaintiff must also show that the defendant's conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience" to sustain a substantive due process claim. Matican v. City of New York, 524 F.3d 151, 155 (2d Cir. 2009) (quoting Ctny. of Sacramento v. Lewis, 523 U.S. 833, 848 n.8 (1998)).

As explained below, Golian's claim falls into neither category of due process liability recognized by the Court of Appeals, and the municipal defendants' conduct does not shock the conscience.

The Court of Appeals locates the origins of the special relationship theory in the Supreme Court's observation that "in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." DeShaney, 489 U.S. at 198; see Matican, 524 F.3d at 155. Such circumstances arise "when the State takes a person into its custody and holds him there against his will," which creates for the State "a corresponding duty [under the Due Process Clause] to assume some responsibility for his safety and general well-being." DeShaney, 489 U.S. at 199-200.

> In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf -- through incarceration, institutionalization, or other similar restraint of personal liberty -- which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.

Id. at 200 (emphasis added). For this reason, the Court of Appeals has "focused on involuntary custody as the linchpin of any special relationship exception." Matican, 524 F.3d at 156.

Involuntary custody for purposes of substantive due process does not require the plaintiff to be in the physical custody of the State, but some form of functional state control over the person is required. The Court of Appeals has held that a parolee

and the State share a custodial relationship for purposes of substantive due process because the parolee is in the State's legal custody and "his or her freedom of movement, while not as restricted as that of an incarcerated prisoner, is nonetheless somewhat curtailed." Jacobs v. Ramirez, 400 F.3d 105, 106 (2d Cir. 2005) (per curiam). The court has also cited foster care as a form of involuntary custodianship of the State over the individual. See Matican, 524 F.3d at 156 (citing Doe v. N.Y.C. Dep't of Soc. Servs., 649 F.2d 134, 141 (2d Cir. 1981)).

Golian seeks to expand the definition of involuntary custody further than it has been expanded before. Golian does not allege that she was imprisoned, institutionalized, or otherwise subjected to a traditional form of state control. Rather, she urges that state employees required by law to report suspicions of child maltreatment and disclose their names in such reports are under the involuntary custody of the State.

This is not the kind of relationship the Court of Appeals envisioned when it described the "limited circumstances" under which affirmative state action may create a duty of care under the Due Process Clause. See id. at 156. There is no question that the requirement under New York law that teachers report suspicions of child abuse or neglect is a special burden not

shared by all citizens. See N.Y. Soc. Serv. Law § 413.[7] But that requirement does not place New York's public school teachers involuntarily in the State's legal or physical custody. The State assumes custody over an individual when it "restrains the individual's freedom to act on his own behalf." DeShaney, 489 U.S. at 200; cf. Jacobs, 400 F.3d at 107 ("[B]ecause [the plaintiff] alleges that the [S]tate effectively compelled him to live in unsafe conditions, we cannot conclude beyond doubt that he can prove no set of facts that would entitle him to relief." (internal quotation marks omitted)). Golian does not allege that New York took her "into its custody and [held her] there against [her] will" -- she does not allege that she was forced to become a teacher. See DeShaney, 489 U.S. at 199-200. Golian freely accepted her job as a teacher, and in so doing, accepted of her own accord that she may be required to comply with the laws that apply to teachers, including the requirement to file child maltreatment reports with the SCR should she develop the appropriate level of suspicion.

Golian cites no support for the proposition that accepting employment with such a condition is sufficient to create a special relationship with the State based on restraint. The

---

[7] The reporting requirement is imposed upon numerous individuals, both private citizens and public officials, including physicians, dentists, optometrists, psychiatrists, Christian Science practitioners, mental health professionals, peace officers, police officers, district attorneys, and assistant district attorneys -- to name a few.

reporting requirement applies to both private and public persons listed in the statute who, by virtue of their occupations, have reasons to have contacts with children. See N.Y. Soc. Serv. Law § 413. There is nothing about public employment that provides greater protections to public employees compared to private persons who have the same reporting requirements. Neither group is subject to some form of involuntary restraint. Indeed, it is not uncommon for public employees to be asked to surrender certain rights or assume additional burdens as conditions of employment. See, e.g., Engquist v. Or. Dep't of Agriculture, 553 U.S. 591, 599 (2008) ("[W]e have often recognized that government has significantly greater leeway in its dealings with citizen employees than it does when it brings its sovereign power to bear on citizens at large."). It would defy the Court of Appeals' directive to apply the special relationship only in "limited circumstances" if courts considered every person subject to a mandatory reporting requirement to be in a custodial relationship with the State akin to prison confinement. See Matican, 524 F.3d at 156.

Accordingly, Golian has failed to establish that her claim falls within the special relationship theory of substantive due process liability.

The State may also "infringe a victim's due process rights when its officers assist in creating or increasing the danger that the victim faced at the hands of a third party." Matican, 524 F.3d at 157. This is commonly referred to as the "state-created danger" theory. Id.

Liability under this theory turns on whether the state conduct contributing to the victim's injury was "affirmative," which can give rise to liability, or "passive," which cannot give rise to liability. Id. The State affirmatively creates a victim's danger when its agents communicate, explicitly or implicitly, to a third party encouragement or official sanction to attack the victim, usually including an affirmation that the third party may attack the victim with impunity. Okin v. Vill. of Cornwall-on-Hudson Police Dep't, 577 F.3d 415, 429, 430 (2d Cir. 2009); see also Hemphill v. Shott, 141 F.3d 412, 418 (2d Cir. 1998); Dwares v. City of New York, 985 F.2d 94, 99 (2d Cir. 1993), overruled on other grounds by Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993). A state agent's mere failure to intervene to prevent an attack by a third party is passive conduct for purposes of this theory. Matican, 524 F.3d at 157.

Golian disputes the proper test for affirmative versus passive conduct under the state-created danger theory. She asserts that the cases do not require state agents to condone or encourage the third-party violence. Rather, she contends that state-created danger liability requires no more than a showing that the state agent's actions contributed to or increased the likelihood that the victim would be unsafe.

Cases from other circuit courts of appeals, such as the Third and Sixth Circuit Courts of Appeals, lend some support to Golian's argument. See Phillips v. Cnty. of Allegheny, 515 F.3d 224 (3d Cir. 2008); Kallstrom v. City of Columbus, 136 F.3d 1055 (6th Cir. 1998). These courts apply the following test or a substantial equivalent: State action qualifies as a state-created danger if

> (1) the harm ultimately caused to the plaintiff was foreseeable and fairly direct; (2) the state-actor acted in willful disregard for the plaintiff's safety; (3) there was some relationship between the state and the plaintiff; and (4) the state-actor used his authority to create an opportunity for danger that otherwise would not have existed.

Phillips, 515 F.3d at 235; accord Kallstrom, 136 F.3d at 1066. This formulation of the state-created danger test does not contain any requirement that the state agent encouraged or officially sanctioned the private violence.

But Second Circuit law has always included such a requirement. As far back as 1998, the Court of Appeals stated that the state-created danger theory applies when "a state actor aids and abets a private party in subjecting a citizen to unwarranted physical harm." Hemphill, 141 F.3d at 418 (emphasis added). Civil aiding-and-abetting liability generally requires that the defendant knows of a breach of duty and provides "substantial assistance or encouragement" of such breach. Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 181 (1994) (quoting Restatement (Second) of Torts § 876(b) (1977)). In 2008, the Second Circuit Court of Appeals recognized that its state-created danger test differs somewhat from the test adopted by some other courts of appeals. Matican, 524 F.3d at 158 n.7. The court found that it was unnecessary in that case to decide whether to follow the other circuit courts or retain the encouraged-or-officially-sanctioned-violence requirement. Id. But in 2009, in Okin v. Village of Cornwall-on-Hudson Police Department, the Second Circuit Court of Appeals reaffirmed that "[t]he affirmative conduct of a government official may give rise to an actionable due process violation if it communicates . . . official sanction of private violence" or if the state actor "affirmatively encouraged" third-party

violence. 577 F.3d at 429, 430 (emphases added). That is the test this Court must apply in this case.[8]

**b.**

Golian's complaint does not contain allegations sufficient to make out a claim of state-created danger. The only specific action that Golian alleges that may have revealed her identity to DeJesus is Harper's subpoena to Golian. That act was not affirmative conduct under Okin. The complaint contains no plausible allegation that Harper's subpoena of Golian or any other action encouraged or officially sanctioned DeJesus's attack. Rather, the subpoena served a legitimate function in the ACS's pursuit of child neglect charges against DeJesus.

Golian asserts that because the ACS disclosed her identity after she refused to comply with Harper's subpoena, it is plausible to infer that the disclosure was in response to or in retaliation for her refusal to testify. As a threshold matter,

---

[8] The District Court cases cited by Golian do not require a different result. In Citizens Accord, Inc. v. Town of Rochester, No. 98-cv-715, 2000 WL 504132 (N.D.N.Y. Apr. 18, 2000), the district court followed the state-created danger test from Kallstrom, which differs from that adopted by the Second Circuit Court of Appeals because it does not require that the state actor affirmatively encouraged the third-party violence. See id. at *20 (quoting Kallstrom, 136 F.3d at 1066). In Doe v. Orange-Ulster Board of Co-Op. Educational Services, No. 96-cv-695, 1999 WL 34807339, at *7 (S.D.N.Y. Mar. 26, 1999), Magistrate Judge Fox applied a different test from the Second Circuit Court of Appeals, and in any event the Magistrate Judge found that there was no viable claim under the state-created danger theory of liability. Finally, the district court's opinion in Matican v. City of New York, 424 F. Supp. 2d 497, 506 (E.D.N.Y. 2006), provides little guidance because the court ultimately found that the conduct of the police officers was not actionable because it did not shock the conscience.

the complaint does not allege that Golian's identity was disclosed to DeJesus after she refused to testify at the hearing, nor does it contain any allegation from which one could infer such disclosure. In any event, there is no plausible allegation that Harper or any other municipal employee affirmatively encouraged DeJesus to attack Golian.

Golian also attempts to draw an analogy between her case and cases from outside this Circuit that hold that a state actor can be liable under the Due Process Clause for disclosing confidential information about a person, usually a confidential informant, regardless of whether the state actor encouraged or condoned third-party violence. See Phillips, 515 F.3d at 235; Kallstrom, 136 F.3d at 1056; Nelson v. City of Madison Heights, 141 F. Supp. 3d 726, 733 (E.D. Mich. 2015); Bartsch v. Hackensack Police Dep't, No. 60-cv-3816, 2007 WL 1946658, at *2 (D.N.J. June 29, 2007); McIntyre v. United States, 336 F. Supp. 2d 87, 113-15 (D. Mass. 2004).

As explained above, cases outside this Circuit have limited relevance here given the nature of the state-created danger test established by the Second Circuit Court of Appeals. Moreover, the cases Golian cites are distinguishable on their facts. In each case, the state actor disclosed confidential information in an unauthorized manner or without a justified reason. In Phillips and Kallstrom, the state actors provided to the third-

party aggressor unnecessarily detailed confidential information about the victim or victims that would not have been publicly available otherwise. See Phillips, 515 F.3d at 229 (operators of a 911 call center disclosed to a third party confidential information about the victim's current whereabouts that had "no relationship to their jobs"); Kallstrom, 136 F.3d at 1059 (state officials disclosed to third parties detailed information about undercover officers' personal lives, including social security numbers, personal addresses, phone numbers, and bank account information). In Nelson, the district court found that the state actors disclosed a confidential informant's identity to a third-party for "no reason" and suggested that the result might be different if "the [S]tate had a legitimate interest that was served by" disclosing the informant's identity. 141 F. Supp. 3d at 734. The state actor in McIntyre was an FBI agent in Boston accused of routinely disclosing confidential information, including the identity of informants, to James "Whitey" Bulger, a notoriously violent crime boss, for a questionably legitimate reason. 336 F. Supp. 2d at 98-99. And in Bartsch, the plaintiff alleged that police officials with whom he cooperated as a confidential informant released his identity to a local newspaper for no apparent reason. 2007 WL 1946658, at *1.

Here, there is no plausible allegation that the municipal defendants disclosed Golian's identity without proper authority

or for an improper reason. The only information disclosed was Golian's identity, not unnecessary personal details, such as her bank account information or home address. And the ACS clearly had a legitimate reason and legal basis to subpoena Golian.

Accordingly, Golian's complaint fails to allege a state-created danger claim.

**3.**

Golian's substantive due process claim fails for the additional reason that she has failed to allege any state action that was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Matican, 524 F.3d at 155 (quoting Lewis, 523 U.S. at 847 n.8). Negligent conduct does not qualify as conscious-shocking behavior. Id. at 158. Intentional infliction of an injury may qualify as conscious-shocking in some instances. Id. And reckless conduct is evaluated on a case-by-case basis, but does not qualify as conscious-shocking when the state actors "were subjected to the pull of competing obligations." Id. at 159 (internal quotation marks omitted). That is, "[w]hen great harm is likely to befall someone no matter what a government official does, the allocation of risk may be a burden on the conscience of the one who must make such decisions, but does not shock the contemporary conscience." Lombardi v. Whitman, 485 F.3d 73, 85 (2d Cir. 2007).

There is no plausible allegation that the municipal defendants disclosed Golian's identity to DeJesus with the intent to cause Golian harm. Indeed, the complaint lacks any allegation specifying the state conduct that led to the disclosure of Golian's identity to DeJesus. It follows that the complaint fails to demonstrate how this unspecified conduct was intentional or reckless.

The specific conduct Golian does allege is best described as negligence. To the extent Harper's subpoena may have revealed Golian's identity, there is no indication that Harper issued the subpoena for the purpose for causing Golian harm or with reckless indifference to her safety. It is telling that Golian's overlapping state law claims against the municipal defendants are all claims of negligence. She does not allege any intentional misconduct or recklessness claims against any municipal defendant. See Compl. ¶¶67-70, 78-85, 90-94.

Thus, the municipal defendants' conduct as alleged in Golian's complaint does not shock the conscience. See, e.g., Daniels v. Williams, 474 U.S. 327, 333 (1986) ("[I]njuries inflicted by governmental negligence are not addressed by the United States Constitution . . . ."). Having failed to allege

any of the elements required to make out a substantive due process violation, Golian's § 1983 claim must be dismissed.[9]

### C.

Finally, the Court turns to Golian's claims under New York state law. Compl. ¶¶67-94.

### 1.

The municipal defendants move to dismiss the state law claims against them for want of subject matter jurisdiction.[10] The only jurisdictional basis Golian invokes for these claims is supplemental jurisdiction pursuant to 28 U.S.C. § 1367. See Compl. ¶6. 28 U.S.C. § 1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction" when "the district court has dismissed all claims over which it has original jurisdiction." It is prudent to decline to exercise supplemental jurisdiction where, as here, "the federal claims had been dismissed at a relatively early stage." Valencia ex rel. Franco v. Lee, 316 F.3d 299, 306 (2d Cir. 2003).

---

[9] Golian's claim for municipal liability is dismissed because the Court dismisses Golian's underlying constitutional claim. See Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2003).

[10] The plaintiff bears the burden of proving the Court's jurisdiction by a preponderance of the evidence. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In considering whether to dismiss a claim for want of jurisdiction, the Court generally must accept the material factual allegations in the complaint as true. See J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004). The Court does not, however, draw all reasonable inferences in the plaintiff's favor. Id.; Graubart v. Jazz Images, Inc., No. 02-cv-4645, 2006 WL 1140724, at *2 (S.D.N.Y. Apr. 27, 2006); see also Sokolowski v. Metro. Transp. Auth., 849 F. Supp. 2d 412, 414 (S.D.N.Y. 2012).

Accordingly, the Court declines to exercise supplemental jurisdiction over Golian's state law claims against the municipal defendants.

**2.**

Golian obtained a certificate of default against DeJesus from the Clerk of Court and applied for a default judgment. ECF Nos. 18, 19. The Court previously indicated that Golian would be entitled to a default judgment against DeJesus, but declined to enter such judgment until the claims against the municipal defendants were resolved. ECF No. 27. With the dismissal of the claims against the municipal defendants, the Court has reconsidered Golian's application and concluded it should not exercise supplemental jurisdiction to enter a default judgment against DeJesus. See Fed. R. Civ. P. 12(h)(3); Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 107-08 (2d Cir. 1997).

The only jurisdictional basis Golian invokes for her claims against DeJesus is supplemental jurisdiction pursuant to 28 U.S.C. § 1367. The Court declines to exercise such jurisdiction because it has dismissed Golian's federal claims. See 28 U.S.C. 1367(c)(3); Valencia, 316 F.3d at 306. No other statutory basis of jurisdiction provides the Court with the authority to adjudicate Golian's claims against DeJesus. Federal question jurisdiction pursuant to 28 U.S.C. § 1331 does not lie to

adjudicate Golian's state law claims, and Golian does not assert diversity jurisdiction pursuant to 28 U.S.C. § 1332. See Compl. ¶6. Determining an award of damages against DeJesus would require the determination of issues that will overlap with the issues that can now be litigated in state court with respect to the municipal defendants.

Accordingly, no judgment shall issue against DeJesus, and Golian's claims against her are dismissed without prejudice. See Cave v. E. Meadow Union Free Sch. Dist., 514 F.3d 240, 250 (2d Cir. 2008).

CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the municipal defendants' motion to dismiss Golian's federal claims is **granted**. The Clerk is directed to enter judgment **dismissing with prejudice** Golian's federal claims (Counts 1 and 2) and **dismissing without prejudice** all of Golian's state law claims (Counts 3 through 7). The Clerk is also directed to close all pending motions and to close this case.

**SO ORDERED.**

Dated:    **New York, New York**
          **October 16, 2017**

                                    _____
                                    **John G. Koeltl**
                                    **United States District Judge**